**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

OHIO DEMOCRATIC PARTY; DEMOCRATIC PARTY OF CUYAHOGA COUNTY; MONTGOMERY COUNTY DEMOCRATIC PARTY; JORDAN ISERN; CAROL BIEHLE; and BRUCE BUTCHER,

Plaintiffs,

v.

JON HUSTED, in his official capacity as Secretary of State of the State of Ohio; and MIKE DEWINE, in his official capacity as Attorney General of the State of Ohio,

Defendants.

**Case No. 2:15 CV 1802**

**JUDGE WATSON**

**MAGISTRATE JUDGE KING**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Plaintiffs submit the following opposition to Defendants' Motion to Compel the production of documents responsive to Defendants' Requests for Production Numbers 8–15, 19, 20, 22, 23, and 37.[1]

## I. DEFENDANTS' MOTION TO COMPEL IS UNTIMELY

Plaintiffs asserted their First Amendment objections to Defendants' discovery requests in their responses to Defendants' Requests for Production on October 9th, 2015. (Ex. A). Nevertheless, Defendants waited until after the close of discovery to move to compel. Moreover, they made no effort to meet and confer with Plaintiffs to resolve the dispute. Thus, Defendants' motion lacks the certification required by Rule 37(a) that a good faith effort to resolve the issue has been made. This is particularly unfortunate because Defendants move to compel production

[1] With respect to Requests Nos. 8, 9, 10, 11, and 15, Plaintiffs only objected to the extent that these requests called for the disclosure of plans for future "Get Out the Vote," voter registration, and other campaign- and election-related efforts. Subject to this objection, Plaintiffs produced materials responsive to these requests that related to past activities.

on a number of requests for which Plaintiffs have searched and produced documents, to the extent that they exist, as noted in Footnote 1.

## II. THE FIRST AMENDMENT PROHIBITS THE COMPELLED DISCLOSURE OF THE DOCUMENTS DEFENDANTS SEEK

The First Amendment protects the right to free association. *See NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."). As a consequence, the First Amendment prohibits the compelled disclosure of an organization's communications with its members and affiliates, the sources and uses of its funds, and its internal plans and deliberations—the very materials Defendants seek in the instant motion. *See, e.g., AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (prohibiting disclosure of a political organizations' "internal planning materials," because doing so would "frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and . . . the best means to promote that message" (quoting *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 230–31 & n. 21 (1989)). Moreover, because the right to "association for litigation may be the most effective form of political association," the First Amendment precludes compelled disclosure of Plaintiffs' non-public communications about this suit. *NAACP v. Button*, 371 U.S. 415, 429 (1963).

Courts examining a First Amendment objection look to whether compelling disclosure would result in an "arguable first amendment infringement."[2] *Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 WL 831918, at *3 (S.D. Ohio Mar. 12, 2012) (quoting *Perry v.*

[2] Defendants erroneously argue that the Sixth Circuit has formalized its own test of the First Amendment privilege requiring a showing that disclosure "will result in threats, harassment, or reprisals to specific individuals" of the type that were shown in *NAACP v. Alabama*. Dfs.' Mot. to Compel at 5–6 (citing *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1220 (6th Cir. 1985)). Defendants mischaracterize *Donovan*. *Donovan* held that the chilling effects of the disclosures required by the Labor Management Reporting and Disclosure Act of 1959, while not as substantial as those in *NAACP v. Alabama*, were nevertheless "not inconsequential," and required the government to demonstrate a compelling interest to justify the disclosures. *Id.* at 1221.

*Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010)). "The Court may look to whether disclosure will result in 'membership withdrawal, discouragement of new members, or . . . other consequences which objectively suggest an impact on . . . the members' associational rights." *Id*. (quoting *Perry*, 591 F.3d at 1160). Finally, "violations of a member's desired anonymity may infringe on associational rights." *Id*. Once an arguable First Amendment infringement has been shown, the party seeking disclosure must demonstrate that its need for the information outweighs the First Amendment interests at stake. *Id.* (quoting *Perry*, 591 F.3d at 1161).

**A. Disclosure would infringe on Plaintiffs' First Amendment Rights.**

As explained above, Defendants' seek three extremely broad categories of sensitive information: 1) Plaintiffs' financial information (RFP Nos. 8 and 14);[3] 2) Plaintiffs' future campaign plans and strategies (RFP Nos. 9, 10, 11, and 15);[4] and 3) documents related to Plaintiffs' decision to join this lawsuit and communications with other groups about the challenged laws and this litigation (RFP Nos. 12, 19, 20,[5] 22, 23 and 37).[6] These requests seek information that has little to no conceivable relevance to this litigation. The First Amendment prohibits the compelled disclosure of each of these categories of documents.

First, the First Amendment precludes compelled disclosure of the financial information Defendants seek for the following reasons (*see* Dfs.' RFP Nos. 8 and 14):

- This financial information would reveal Plaintiffs' budget allocations for future campaign activities, their staffing requirements, the localities where they plan to focus their efforts,

[3] Plaintiffs objected to Request No. 8 only to the extent it calls for financial information about future activities and produced responsive materials subject to this objection. However, Request No. 14 is not limited to the issues in this suit but calls for "[a]ll documents related to, referring to, or reflecting ODP's, DPCC's, or MCDP's accounting books, financial statements, annual statements, budgets, earnings, expenses, line items, income, donations, debt, loans, forecasts, and projections."

[4] As noted above, Plaintiffs did produce documents in response to these requests to the extent that they did not include future plans and strategies.

[5] Request No. 20, for example, sweepingly seeks "[a]ll communications between or among the ODP and any of its county affiliates related to the Challenged Laws or this litigation."

[6] In addition to being protected by the First Amendment, many such communications responsive to these requests are also protected by the attorney-client and/or work-product privileges.

and their strategic goals for upcoming elections. The disclosure of this information would put Plaintiffs at a competitive disadvantage with their political opponents, two of whom are the Defendants in this case, thereby "seriously interfer[ing] with [Plaintiffs'] internal group operations and effectiveness." *AFL-CIO*, 333 F.3d at 177–78.

- Furthermore, the disclosure of Plaintiffs' financial information would reveal confidential communications with their donors about their priorities and political strategies. Plaintiffs' financial information "is directly tied to confidential information about specific donors and their giving preferences." Declaration of Zachary West, ¶ 7 ("West Decl.") (Ex. B). Compelling disclosure of this information would make these individuals less likely to contribute to ODP because of the fear that their identity, preferences, and private information would be revealed during litigation. *Id*. This would hinder ODP from associating with this central group of supporters and undermine its ability to raise funds to finance its mission. *Id.*

Consequently, the First Amendment prohibits the compelled disclosure of Plaintiffs' financial information.[7]

Second, the First Amendment prohibits the disclosure of the detailed information about Plaintiffs' future campaign events, goals, and strategies that Defendants have moved to compel for the following reasons (*see* Dfs.' RFP Nos. 9, 10, 11, and 15):

- This material contains information about where and when Plaintiffs intend to focus their activities in future elections as well as information about proprietary technology Plaintiffs use to model and track voter behavior. West Decl, ¶ 8. The disclosure of this information would put Plaintiffs at a competitive disadvantage by revealing to their political opponents their election-related operations and their future plans and strategies. *Id*.
- Furthermore, this material also contains Plaintiffs' communications with outside groups, religious organizations, and candidates regarding the planning for future elections. *Id*. These groups and individuals communicate with Plaintiffs on the understanding that their identities, viewpoints, and political associations are and will remain confidential. *Id*.

---

[7] *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) ("[T]he invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for [f]inancial transactions can reveal much about a person's activities, associations, and beliefs." (quotation omitted)); *Tree of Life Christian Sch.*, 2012 WL 831918, at *3 (prohibiting discovery of information related to plaintiff's donors because "it is highly possible, if not probable, that this could hinder [p]laintiff's ability to receive donations in the future"); *Independence Inst. v. Gessles*, 2011 WL 809781, at *1 (D. Colo. Mar. 2, 2011) (denying motion to compel by Colorado Secretary of State seeking plaintiff's "internal associational activities, including budgetary information, sources of financing, the identities of its contributors and the corresponding amounts contributed"); *In re Heartland Inst.*, 2011 WL 1839482, at *2 (granting on First Amendment grounds motion to quash subpoena seeking donor information); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) ("*ISKCON*") ("[T]he right of associational privacy [applies to] compelled disclosure of the identity of an association's members or sympathizers, and to compelled disclosure of the sources or uses of an organization's funds.").

> Disclosure would prevent Plaintiffs from freely associating with these and other groups in the future by chilling the free flow of information between these organizations. West Decl., ¶ 9.

The First Amendment thus prohibits the compelled disclosure of the internal plans and communications Defendants seek because it would "frustrate [Plaintiffs'] decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and . . . the best means to promote that message." *AFL-CIO*, 333 F.3d at 177 (quoting *Eu*, 489 U.S. at 230–31 & n. 21). Because "disclosure of an association's confidential internal materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness," that material is shielded from discovery. *Id*. at 177–78 (quoting *Buckley*, 424 U.S. at 64).[8]

Third, Defendants seek all of Plaintiffs' internal deliberations and communications with other groups about the challenged laws and about their decision to join this litigation. *See* Dfs.' RFP Nos. 12, 19, 20, 23 and 37. As political organizations, Plaintiffs continuously evaluate and discuss proposed legislation and the possibility of litigation to protect their members' rights. West Decl., ¶ 11. Such activities lie at the heart of their mission. Compelling disclosure of this information would hinder Plaintiffs' ability to share and formulate their political and policy views among their staff, agents, and affiliates. *Id*.

The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as

---

[8] *See also Perry*, 591 F.3d at 1162–63 ("Compelling disclosure of internal campaign communications can chill the exercise of these rights."); *Wyoming v. U.S. Dept. Of Ag.*, 208 F.R.D. 449, 454–55 (D.D.C. 2002) (disclosure of "internal communications and communications among various groups . . . would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'") (quoting *Fed. Election Comm. v. Machinists Non–Partisan Polit. League*, 655 F.2d 380, 388 (D.C. Cir. 1981)); *Dunnet Bay Construction Co. v. Hannig*, 2011 WL 5417123, at *5 (C.D. Ill. Nov. 9, 2011) ("[D]isclosure of private internal communications among [political organization's] staff, volunteers, and supporters would have a chilling effect on their rights by discouraging them from communicating candidly[.]"); *ISKCON*, 1985 WL 315, at *8 (same).

"to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9. Furthermore, the right to associate includes the right to associate for purposes of litigation. *See Button*, 371 U.S. at 429 ("[A]ssociation for litigation may be the most effective form of political association[.]"). As a consequence, the First Amendment prohibits the compelled disclosure of Plaintiffs' internal deliberations and external communications about the challenged laws and this litigation.[9]

Defendants do not discuss the cases above, but contend that a protective order would cure the chilling effect compelling Plaintiffs to produce these documents would have. Dfs.' Mot. to Compel at 5–6 (citing *Marshall v. Bramer*, 828 F.2d 355, 360, (6th Cir. 1987) (disclosure of Klu Klux Klan membership), and *Patterson v. Heartland Indus. Partners, LLP*, 225 F.R.D. 204, 206 (N.D. Ohio 2004) (disclosure of union voting records)). However, neither *Marshall* nor *Patterson* involved a situation such as the one here where political rivals are demanding the disclosure of highly sensitive campaign and financial information from their opponents. A protective order against public disclosure[10] would do nothing to ameliorate the First Amendment harms Plaintiffs would suffer if they were forced to disclose their internal operations, deliberations, and future plans to the Republican Secretary of State and Attorney General.[11]

---

[9] *See also DeGregory v. Attorney Gen. of State of N. H.*, 383 U.S. 825, 828 (1966) (applying the First Amendment privilege to "the views expressed and ideas advocated" at political party meetings); *Dole v. Serv. Employees Union, AFL–CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991) (applying privilege to statements made at union meetings because disclosure "might well cause some Union members to cease speaking freely at meetings, or to cease attending them at all"); *Beinin v. Ctr. for Study of Popular Culture*, 2007 WL 1795693, at *4 (N.D. Cal. June 20, 2007) (prohibiting discovery related to supporters of lawsuit because "[h]ad Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking"); *Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn. 1984) ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected First Amendment interests[.]").

[10] Even if there were a protective order with an attorneys'-eyes only level of protection, Plaintiffs would continue to object to any production of documents concerning their future campaign and fundraising plans and strategy, political and policy strategy, and the personal information of its supporters and/or members. However, Plaintiffs did offer to produce sensitive materials from 2014 subject to a protective order containing an attorneys'-eyes only provision. Defendants rejected that offer and insisted that they needed to be able to show these materials to their clients.

[11] Furthermore, a protective order would do little to remedy the harms Plaintiffs would suffer if compelled to

In sum, the First Amendment prohibits the compelled disclosure of the information Defendants seek. Compelling the disclosure of this information would force Plaintiffs, and future litigants, to choose between protecting the privacy of their confidential information and exercising their First Amendment right to associate for the purposes of litigation. *See Button*, 371 U.S. at 429; *Beinin*, 2007 WL 1795693, at *3. As explained below, Defendants have not and cannot justify their need for this information, and their Motion should therefore be denied.

**B. Defendants cannot establish their need for the requested information.**

Before it can overcome the First Amendment's protection against disclosure, "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation–a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Tree of Life*, 2012 WL 831918, at *3 (quoting *Perry*, 591 F.3d at 1161); *see also Anderson v. Hale*, 2001 WL 503045, at *4 (N.D. Ill. May 10, 2001) ("[T]he inquiring party must show that the information sought is so relevant that it goes to the 'heart of the matter'; that is, the information is crucial to the party's case."). Defendants cannot show this.

First, Defendants request a vast amount of information regarding Plaintiffs' budgetary allocations and plans for future campaign and election activities that they claim are necessary to show standing. Dfs.' Mot. to Compel at 8; Request Nos. 8, 9–11, 14, 15, and 21. However, these requests sweep far beyond what is actually required to show standing, and collecting these materials would be burdensome and needlessly cumulative of the thousands of pages of documents Plaintiffs have already produced that demonstrate their standing to bring this suit.

disclose the identities of Plaintiffs' supporters and the contents of their communications. West Decl., ¶ 9 ("Such disclosure would prevent ODP from freely associating with these and other groups in the future as well as chill the free flow of information between these organizations, as any group that associates with ODP would likely refrain from doing so because it risks having its identity and viewpoints revealed in litigation."). Thus, the threat that those communications could be disclosed to anyone other than their intended recipients in and of itself could chill those communications. *See Perry*, 591 F.3d at 1164 ("A protective order limiting dissemination of [internal campaign] information will ameliorate but cannot eliminate these threatened harms.").

Standing requires a minimal showing. In *Crawford v. Marion Cnty. Election Bd.*, which involved a challenge by the Democratic Party to Indiana's voter ID law, the Seventh Circuit explained that "the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote." 472 F.3d 949, 951 (7th Cir. 2007) *aff'd*, 553 U.S. 181 (2008). "The fact that the added cost has not been estimated and may be slight does not affect standing, which *requires only a minimal showing of injury*." *Id*. (emphasis added).[12]

Given that the showing required for standing is "slight," *Crawford*, 472 F.3 at 951, and does not require an estimation of the costs Plaintiffs will incur as a result of the challenged laws, there is simply no need for the information Defendants seek. Indeed, only by exaggerating the showing required for standing could Defendants justify their intrusive probe into Plaintiffs' internal planning and financial information. *See, e.g.*, Dfs.' RFP Nos. 14, 15.

None of this information is necessary to establish Plaintiffs' standing. Plaintiffs need only show that they "reasonably anticipate that they will have to divert personnel and time" as a result of the challenged laws, *Browning*, 522 F.3d at 1166, and there is no requirement that the costs of these efforts be determined to establish standing, *Crawford*, 472 F.3d at 951. To this end, Plaintiffs have produced hundreds of documents detailing their past activities with respect to voter education, "Get Out the Vote," voter registration, and other efforts that are impacted by the challenged laws. The information Defendants seek in their requests is either needlessly cumulative of this material or entirely irrelevant to standing or any other issue in this case.

---

[12] *See also United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 690 (1973) (noting that the Supreme Court has "allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote; a $5 fine and costs, and a $1.50 poll tax" (citations omitted)); *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008) (holding that plaintiffs had standing where they "reasonably anticipate that they will have to divert personnel and time to educating volunteers and voters on compliance with [voting law]" even though "the injuries are anticipated rather than completed events").

Moreover, Defendants cannot be heard to complain that Plaintiffs have produced insufficient material to support their standing. If Defendants believe that the evidence does not establish standing, they are certainly free to argue that. However, given the "minimal showing" required, Defendants should be foreclosed from using standing as a pretext to probe into Plaintiffs' most sensitive information.

Defendants also claim that the information they demand pertains to the merits of the case. *See* Dfs.' Mot. to Compel at 8 ("Request 8 (money and resources expended), Requests 9-11, 21 (get-out-the-vote activities), Request 14 (financial information), Request 15 (programs and plans *related to* the challenged provisions) are all relevant to the actual significance of the minor changes in the law.").[13] However, Defendants conflate the merits with standing. The issues in this case concern the burdens and discriminatory impacts the challenged laws place on Ohio's *voters* and their constitutionality and legality under the Voting Rights Act. The money and effort expended by Plaintiffs as a result of these laws have no bearing on the magnitude of these burdens on voters or the sufficiency of the state's justifications for them.

Similarly, Defendants demand irrelevant information about Plaintiffs' outside communications regarding the challenged laws and this litigation. *See* Dfs.' RFP Nos. 12, 19, 20, 22, and 23. Contrary to Defendants' assertion, this information says nothing about the "legitimacy of Plaintiffs' claims." Again, the issue in this case is the impact of these laws on Ohio's voters, and the views non-parties may or may not have about those burdens and impacts are irrelevant to the constitutionality or legality of the laws challenged in this suit. Defendants also claim that information about the timing of Plaintiffs' decision to join this suit is relevant to their claim of laches. Dfs.' Mot. to Compel at 8; RFP Nos. 12 and 37. If Defendants believe that Plaintiffs filed this suit too late, they remain free to make that argument. But, Plaintiffs' decision

[13] As explained above, Plaintiffs have produced this information as it pertains to past years and elections.

making with respect to whether and when to join this suit has no bearing on whether the alleged delay prejudiced Defendants in any fashion. Moreover, an unconstitutional or discriminatory burden on the right to vote cannot be barred by laches, and Defendants cite no contrary authority.

In sum, Defendants have not met the heightened showing required to overcome Plaintiffs' core First Amendment rights to keep this information private and confidential. For this reason, their motion to compel should be denied. *See Tree of Life*, 2012 WL 831918, at *3; *Perry*, 591 F.3d at 1161.

**C. Producing a privilege log would infringe Plaintiffs' First Amendment rights**

Finally, Plaintiffs should not be required to log the documents protected by the First Amendment. A privilege log would disclose the identities of Plaintiffs' supporters and those with whom they communicate about their plans, strategies and goals. Moreover, it would also disclose which members are actively involved in these sensitive communications. Thus, while Plaintiffs have already disclosed, both in regulatory filings and in the disclosures in this case, their leadership, they object to disclosing the frequency and identity of those who are involved in these communications. Disclosing this would cause the very harm to Plaintiffs' associational interests that the First Amendment protection against disclosure was designed to prevent.[14]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendants' Motion to Compel on the grounds that it was untimely filed, or, in the alternative, that it seeks information protected by the First Amendment from disclosure.[15]

---

[14] Plaintiffs acknowledge that the Ninth Circuit in *Perry*, although prohibiting the disclosure of First Amendment-protected material, required the withholding party to provide a privilege log. *Perry*, 591 F.3d at 1133, n.1. However, Plaintiffs are not aware of any other cases in this area similarly requiring a privilege log.

[15] Plaintiffs note that Defendants' Motion to Compel addresses only their First Amendment objections to Defendants' discovery requests. In submitting the foregoing, Plaintiffs do not waive their other objections to Defendants' requests.

Dated: November 9, 2015

Respectfully submitted,

**_/s/ Bruce Spiva__________________**
**Bruce V. Spiva***
**Trial Attorney**
**Marc E. Elias***
**Elisabeth C. Frost***
**Rhett P. Martin***
**Amanda Callais***
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202-654-6200
Facsimile: 202-654-6211
MElias@perkinscoie.com
BSpiva@perkinscoie.com
EFrost@perskinscoie.com
RMartin@perkinscoie.com
ACallais@perkinscoie.com

**Joshua L. Kaul***
Perkins Coie LLP
1 East Main Street
Suite 201
Madison, WI 53703-5118
Telephone: (608) 294-4007
Facsimile: (608) 663-7499

**Donald J. McTigue (0022849)**
**J. Corey Colombo (0072398)**
McTigue McGinnis & Colombo LLC
545 East Town Street
Columbus, OH 43215
Telephone: (614) 263-7000
Facsimile: (614) 263-7078
dmctigue@electionlawgroup.com
ccolombo@electionlawgroup.com

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I served a copy of the foregoing by transmitting a copy to all counsel with an e- mail address of record, who have appeared and consent to electronic service in this action and any consolidated actions.

This the 9th day of November, 2015.

By: /s/ Bruce Spiva