**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

# EXHIBIT

# A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| OHIO DEMOCRATIC PARTY, *et al.*, | : |
| | : |
| | : |
| *Plaintiffs*, | : **Case No. 2:15-CV-1802** |
| | : |
| | : |
| v. | : **JUDGE WATSON** |
| | : |
| | : **MAGISTRATE JUDGE KING** |
| JON HUSTED, *et al.*, | : |
| | : |
| | : |
| *Defendants*. | : |
| | : |

---

**PLAINTIFFS OHIO DEMOCRATIC PARTY, DEMOCRATIC PARTY OF CUYAHOGA COUNTY, AND MONTGOMERY COUNTY DEMOCRATIC PARTY'S RESPONSES AND OBJECTIONS TO DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

---

Plaintiffs Ohio Democratic Party ("ODP"), Democratic Party of Cuyahoga County ("DPCC"), and Montgomery County Democratic Party ("MCDP") (collectively, "Plaintiffs") provide the following responses and objections to Defendant Secretary of State Jon Husted's Requests for Production issued on September 9, 2015.

## I.     PRELIMINARY STATEMENT

Discovery is ongoing, and Plaintiff has not completed its investigation.  These responses are based on the information and documents currently available to Plaintiff, and Plaintiff reserves the right to alter, supplement, amend, or otherwise modify these responses in light of additional facts revealed through subsequent inquiry.

## II.     GENERAL OBJECTIONS

1.     Nothing in these objections or responses can be taken as an admission that Plaintiffs agree with Defendant's use or interpretation of terms.  These responses are based on Plaintiffs'

1

understanding of each individual request. To the extent Defendant asserts an interpretation of any request that is inconsistent with Plaintiffs' understanding, Plaintiffs reserve the right to supplement their responses. In addition, Plaintiffs' are continuing their review of documents. A statement that Plaintiffs will produce any responsive, non-privileged documents is not a response that such documents exist.

2.      Plaintiffs object to Defendant's requests and to each definition and instruction to the extent that they purport to impose obligations greater than those imposed by the applicable Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Southern District of Ohio.

3.      Plaintiffs object to Defendant's requests to the extent that they purport to require Plaintiff to provide information before the disclosure deadlines set by the Scheduling Order or the Federal Rules of Civil Procedure.

4.      Plaintiffs object to Defendant's requests to the extent that they purport to require Plaintiffs to search for and produce documents that are not in their possession, custody, or control.

5.      Plaintiffs object to the overly broad and unduly burdensome nature of Defendant's requests, definitions, and instructions. Plaintiffs object to all discovery requests to the extent: (1) they seek information or documents obtainable from other sources that are more convenient, less burdensome, or less expensive; (2) they request an indexing or review of all Plaintiffs' records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact or issue, or otherwise seek a dress rehearsal of the trial and call for evidence upon which Plaintiffs intend to rely to prove any fact or facts; (3) they seek information that may be derived or ascertained from a review, examination, audit, or inspection of business records to be produced where the burden of deriving or ascertaining such answers or information is substantially the same for Plaintiffs as for Defendants; (4) they are cumulative or duplicative of any other

2

request; (5) they are cumulative or duplicative of information or documents already in the possession of Defendants; (6) they require the expenditure of time and resources that outweighs the likely benefit of such efforts.

6.     Plaintiffs object to all requests to the extent that they call for information or documents that fall within any relevant privilege (including, without limitation, the attorney-client privilege), are within the work-product doctrine (including, without limitation, communications with and materials created by consulting experts), call for information or documents that constitute trial-preparation materials within the meaning of Rule 26, constitute expert witness information that is not discoverable under Rule 26, or are protected by a joint or common interest privilege or any other privilege recognized by law.  This includes but is not limited to any requests that require an indexing or review of Plaintiffs' records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact or issue, or otherwise seek a dress rehearsal of the trial and call for evidence upon which Plaintiffs intend to rely to prove any fact or facts.  Any disclosure of privileged or protected information in Plaintiffs' production is inadvertent, and Plaintiffs reserve all rights to cure any such disclosure.

7.     Plaintiffs object to these requests to the extent they call for information that would violate Plaintiffs' rights to association and petition under the First Amendment, including but not limited to internal deliberations and communications concerning whether, when and how to bring this lawsuit; deliberations and communications regarding the supporters or potential supporters of this lawsuit; communications and deliberations among supporters or potential supporters of this lawsuit; and/or privileged financial information and campaign plans and strategies.  *See Buckley v. Valeo*, 424 U.S. 1, 66 (1976) ("[T]he invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for [f]inancial transactions can reveal much about a person's activities, associations,

and beliefs." (quotation omitted)); *NAACP v. Button*, 371 U.S. 415, 429 (1963) ("[A]ssociation for

litigation may be the most effective form of political association," and such activities "are modes of

expression and association protected by the First and Fourteenth Amendments."); *Perry v.*

*Schwarzenegger*, 591 F.3d 1126, 1142 & n.9 (9th Cir. 2009) (The "right to associate with others to

advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy

and messages, and to do so in private," as well as "to organize and direct them in the way that will

make them most effective."); *AFL-CIO v. FEC*, 333 F.3d 168, 178 (D.C. Cir. 2003) (prohibiting

compelled "public disclosure of an association's confidential internal materials, [where] it intrudes

on the privacy of association and belief guaranteed by the First Amendment, as well as seriously

interferes with internal group operations and effectiveness"); *Wyoming v. U.S. Dept. of Ag.*, 208

F.R.D. 449, 454–55 (D.D.C. 2002) (disclosure of "internal communications and communications

among various groups . . . would have a potential 'for chilling the free exercise of political speech

and association guarded by the First Amendment'") (quoting *Fed. Election Comm. v. Machinists*

*Non-Partisan Polit. League*, 655 F.2d 380, 388 (D.C. Cir. 1981)); *Dunnet Bay Construction Co. v.*

*Hannig*, 2011 WL 5417123, at *5 (C.D. Ill. Nov. 9, 2011) (denying motion to compel on First

Amendment grounds where "disclosure of private internal communications among Taxpayers staff,

volunteers, and supporters would have a chilling effect on their rights by discouraging them from

communicating candidly"); *Beinin v. Ctr. for Study of Popular Culture*, 2007 WL 1795693, at *4

(N.D. Cal. June 20, 2007) ("Support of litigation is a form of expression and association protected

by the First Amendment."); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315, at *8

(S.D.N.Y. Feb. 28, 1985) ("*ISKCON*") (granting protective order against interrogatories seeking

identification of individuals and entities associated with the plaintiff and the disclosure of plaintiff's

financial affairs); *Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn. 1984) ("[C]ompelled

disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would

4

create a genuine risk of interference with protected First Amendment interests[.]").

8.      Plaintiffs object to these requests to the extent that they seek information that is irrelevant to any claim or defense in this action and is not calculated to lead to the discovery of admissible evidence, and to the extent they appear solely calculated to harass, annoy, burden, or embarrass Plaintiffs.

9.      Plaintiffs object to these requests to the extent that they call for the production of confidential documents that Plaintiffs will only produce subject to an appropriate protective order.

10.     Plaintiffs reserve all objections as to the competence, relevance, materiality, admissibility, or privileged status of any materials provided in response to these requests for production.

### III. SPECIFIC RESPONSES AND OBJECTIONS

1.      All documents identified by any Plaintiff in Plaintiffs' answers and responses to Ohio's Interrogatories.

**RESPONSE:**  Plaintiffs object to this request to the extent it seeks publicly available documents and materials for which citations have been provided in their Interrogatory responses.

Subject to this specific objection and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents identified in their answers and responses to Defendants' Interrogatories.

2.      All documents identified by any Plaintiff in Plaintiffs' answers and responses to Ohio's Requests for Admission.

**RESPONSE:**  Plaintiffs respond that there are no responsive documents.

3.      All documents Plaintiffs relied on, cited to, obtained statistics from, quoted, or

consulted in answering Ohio's Interrogatories.

**RESPONSE:** Plaintiffs object to this request to the extent it seeks publicly available documents and materials for which citations have been provided in their Interrogatory responses.

Subject to this specific objection and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents identified in their answers and responses to Defendants' Interrogatories.

4.     All documents Plaintiffs relied on, cited to, obtained statistics from, quoted, or consulted in answering Ohio's Requests for Admission.

**RESPONSE:** Plaintiffs respond that there are no responsive documents.

5.     All documents Plaintiffs relied on, cited to, obtained statistics from, quoted, or consulted to support, develop, formulate, or draft the allegations and factual statements made in the Amended Complaint.

**RESPONSE:** Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous and vague as to the terms "relied on, cited to, obtained statistics from, quoted, or consulted to support, develop, formulate, or draft the allegations and factual statements made in the Amended Complaint." Plaintiffs object to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product privilege, or calls for trial-preparation materials. Plaintiffs also object to this request to the extent it seeks publicly available documents and materials for which citations have been provided in the Amended Complaint. Plaintiffs additionally object to this request to the extent it calls for documents not in Plaintiffs' possession, custody, or control or for documents created by or in the possession of Defendants.

Subject to these specific objections and the General Objections above, Plaintiffs will

produce any responsive, non-privileged documents in their possession, custody, or control.

       6.     All documents that support, contradict, or relate to any of the allegations and statements in the Amended Complaint.

**RESPONSE:** Plaintiffs object to this request on the ground that is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "support," "contradict," and "relate to." Plaintiffs further object to this request to the extent that it calls for privileged attorney-client, work-product, or trial-preparation materials. Plaintiffs object to this request to the extent it seeks publicly available documents and materials for which citations have been provided in the Amended Complaint. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants or were created by Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

       Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

7.      All studies, periodicals, articles, reports, papers, newspaper articles and any other document referred to, cited to, or quoted in the Amended Complaint, excluding publicly available court opinions, statutes, and bills.

**RESPONSE:**  Plaintiffs object to this request on the ground that it is duplicative of Request No. 5.  Plaintiffs also object to this request to the extent it seeks publicly available documents and materials for which citations have been provided in the Amended Complaint.  Plaintiffs additionally object to this request to the extent it calls for documents not in Plaintiffs' possession, custody, or control or for documents created by or in the possession of Defendants.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive documents, non-privileged documents in their possession, custody, or control.

8.      All documents reflecting or related to the money and resources expended by ODP, DPCC, or MCDP regarding the Challenged Laws.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague as to the terms "reflecting," "related to," and "regarding the Challenged Laws."  Plaintiffs also object to this request on the grounds that they do not breakdown their operational costs in the manner this request implies.

Plaintiffs further object to this request to the extent that it calls for the disclosure of privileged financial information or for budget allocations related to specific election-related plans, programs or events that are protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non-Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL

8

1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' specific election-related plans, programs or events would severely impair their ability to organize their affairs, select and promote their message, and advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.").  The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9.  The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign." *Id.*  As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics." *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect

9

against the disclosure of . . . the content of internal communications between members, employees, and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents that show how the Challenged Laws have burdened and will continue to burden their purposes, goals, and efforts.

9.    All documents related to or showing how the Challenged Laws purportedly affect "ODP's efforts to register voters and get them to the polls," ODP's "GOTV drives," or ODP's "efforts to persuade its members to vote early, including poor and minority voters," or how the Challenged Laws "will cause ODP to divert resources" or will "harm ODP by disproportionately reducing the turnout of Democratic voters."

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "related to or showing."  Plaintiff objects to this request to the extent that it calls for specific election-related plans, programs or events that are protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4;

*ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' specific election-related plans, programs or events would severely impair their ability to organize their affairs, select and promote their message, and advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.").  The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective."  *Perry*, 591 F.3d at 1142 & n.9.  The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign."  *Id.*  As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics."  *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect

against the disclosure of . . . the content of internal communications between members, employees, and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce documents that show how the Challenged Laws have burdened and will continue to burden their purposes, goals, and efforts.


10.     All documents related to or showing how the Challenged Laws purportedly burden DPCC's "voter-registration and GOTV efforts," ODP's "GOTV drives," or DPCC's "efforts to persuade its members to vote early, including poor and minority voters," or will "harm DPCC by disproportionately reducing the turnout of Democratic voters," or how DPCC "will be forced to divert its resources" as a result of the Challenged Laws.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "related to or showing."  Plaintiff objects to this request to the extent that it calls for specific election-related plans, programs or events that are protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' specific election-related plans, programs or events would severely impair their ability to organize their affairs, select and promote their message, and advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.").  The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9.  The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign." *Id.*  As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics." *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect against the disclosure of . . . the content of internal communications between members, employees,

13

and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce documents that show how the Challenged Laws have burdened and will continue to burden their purposes, goals, and efforts.


11.     All documents related to or showing how the Challenged Laws purportedly burden MCDP's "voter-registration and GOTV efforts," ODP's "GOTV drives," or MCDP's "efforts to persuade its members to vote early, including poor and minority voters," or how the Challenged Laws "will force MCDP to divert resources" or will "harm MCDP by disproportionately reducing the turnout of Democratic voters."

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "related to or showing."  Plaintiff objects to this request to the extent that it calls for specific election-related plans, programs or events that are protected by the associational privilege of the First Amendment. *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' specific election-related plans, programs or events would

severely impair their ability to organize their affairs, select and promote their message, and advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.").  The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9.  The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign." *Id.*  As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics." *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect against the disclosure of . . . the content of internal communications between members, employees, and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes

15

inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at 1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce documents that show how the Challenged Laws have burdened and will continue to burden their purposes, goals, and efforts.


12.     All meeting minutes, memoranda, communications, and documents to, from, or within ODP, DPCC, or MCDP regarding the decision to become Plaintiffs in this litigation, or the decision-making related thereto.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it calls for the disclosure of privileged attorney-client, work-product, common-interest, and/or trial-preparation materials. Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality and/or legality under the Voting Rights Act, of Ohio's actions in adopting and implementing the Challenged Laws, and material related to Plaintiffs' internal deliberations about joining this suit is irrelevant and therefore not subject to discovery.

Moreover, Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178;

16

*Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of "memoranda, communications, and documents to, from, or within ODP, DPCC, or MCDP regarding the decision to become Plaintiffs in this litigation, or the decision-making related thereto" would inhibit Plaintiffs' core First Amendment right to associate for the purposes of litigation. It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "[A]ssociation for litigation may be the most effective form of political association," and such activities "are modes of expression and association protected by the First and Fourteenth Amendments." *NAACP v. Button*, 371 U.S. at 429; *see also Beinin*, 2007 WL 1795693, at *3 ("Support of litigation is a form of expression and association protected by the First Amendment. Compelled disclosure of the names of individuals or groups supporting a plaintiff's lawsuit thus creates a risk of interference with First Amendment-protected interests."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests[.]").

13.   Documents sufficient to identify the officers, directors, and executive-level or controlling employees, members, and agents of ODP, DPCC, or MCDP.

**RESPONSE:** Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague as to the terms "controlling employees," "members," and "agents." Plaintiffs additionally object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and

17

embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting and implementing the Challenged Laws, and material related to the internal structure of Plaintiffs' organizations is irrelevant and therefore not subject to discovery.

Plaintiffs additionally object to this request on the ground that it seeks information that is already in Defendant's possession.  Plaintiffs are required to disclose to the Secretary of State's office their executive-level members, officers, directors and employees pursuant to Ohio Code § 3517.06.

Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of the identity of Plaintiffs' members and agents would chill their right to organize their affairs, select and promote their message, and to advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure.  "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance.  Had Plaintiff's email correspondents realized that privately

18

supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage.  Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

14.     All documents related to, referring to, or reflecting ODP's, DPCC's, or MCDP's accounting books, financial statements, annual statements, budgets, earnings, expenses, line items, income, donations, debt, loans, forecasts, and projections.

**RESPONSE**:  Plaintiffs object to this request on the grounds that it is vague, ambiguous, unduly burdensome, and overbroad.  Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' internal financial information is irrelevant and therefore not subject to discovery.

Plaintiffs additionally object to this request to the extent it calls for documents that are

already in the Secretary of State's possession, custody or control or are publicly available and more easily obtained from another source.  Plaintiff ODP files regular financial disclosure reports with the Secretary of State's office and the Federal Elections Commission.  Plaintiffs DPCC and MCDP file regular financial disclosures with the Cuyahoga County and Montgomery County Boards of Election, respectively, and with the Secretary of State's office.  As a result, much of the information sought by this request is already in Defendant's possession or can be obtained more easily from these other sources.

Moreover, Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' "accounting books, financial statements, annual statements, budgets, earnings, expenses, line items, income, donations, debt, loans, forecasts, and projections" would reveal to Plaintiffs' political opponents sensitive internal financial information that would impair their ability to organize their affairs, select and promote their message, and to advocate successfully for the candidates and causes they support.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure.  *Buckley*, 424 U.S. at 66 ("[T]he invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for [f]inancial transactions can reveal much about a person's activities, associations, and beliefs."); *AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and

20

select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *ISKCON*, 1985 WL 315, at *8 (associational privilege protects against the "compelled disclosure of the sources or uses of an organization's funds"); *Eilers*, 575 F. Supp. at 1261 (same).

15.     All documents reflecting, referring to, or related to the ODP's, DPCC's, or MCDP's purposes, strategic direction, plans, strategic plans, goals, programs, and planned events that relate to or are affected by any of the Challenged Laws.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "reflecting, referring to, or related to . . . . purposes, strategic direction, plans, strategic plans, goals, programs, and planned events that relate to or are affected by any of the Challenged Laws."  Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' purposes, strategic direction, plans, strategic plans, goals, programs, and planned events is irrelevant and therefore not subject to discovery.

Moreover, Plaintiffs object to this request on the grounds that it calls for information protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of information containing Plaintiffs' detailed purposes, strategic direction, plans, strategic plans, goals, programs, and planned events would severely impair their ability to organize their affairs, select and promote their message, and advocate successfully for the candidates and causes they support. It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."). The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9. The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign." *Id.* As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics." *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . . frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect against the disclosure of . . . the

22

content of internal communications between members, employees, and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control that show how the Challenged Laws have and will continue to burden their purposes, goals, and efforts.

16.    For each of Plaintiffs, all documents related to, referring to, regarding, or reflecting communications, emails, texts, correspondence, telephone calls, meetings, conferences, or exchanges to, from, or with any of the individuals and entities listed below that discuss, concern, or are related in any way to Ohio's election laws, the allegations in this lawsuit, purported disenfranchisement, purported discrimination, Ohio's early voting schedule and opportunities, "Golden Week", Ohio's absentee ballot laws and directives, Ohio's provisional ballot laws and directives, consolidation of poll books at voting precincts, the number of early voting centers in Ohio, this lawsuit, the possibility of suing Ohio or its officials, or election processes and procedures in Ohio:

Any of the other Plaintiffs in this litigation, the Ohio Organizing Collaborative, the Democratic National Committee; the Ohio State Conference of the National Association for the Advancement of Colored People; the National Association for the Advancement of Colored People;

the League of Women Voters of Ohio; Bethel African Methodist Episcopal Church; Omega Baptist Church; College Hill Community Church Presbyterian, U.S.A.; A. Philip Randolph Institute; Darryl Fairchild, the American Civil Liberties Union, Hillary Rodham Clinton, George Soros, The Clinton Foundation, The Open Society Foundations, or any individual or entity acting for or on behalf of any of the foregoing.

**RESPONSE:**  Plaintiffs object to this request to the extent that it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation material as well as any material protected by the common-interest privilege.  Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' communications regarding the Challenged Laws and this suit is irrelevant and therefore not subject to discovery.

Furthermore, Plaintiffs object to this request to the extent it calls for the disclosure of material protected by the associational privilege guaranteed by the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of communications about the Challenged Laws and this suit would reveal the identity, viewpoints, and political associations of Plaintiffs and their supporters, thereby severely chilling their right to organize their affairs, select and promote their message, advocate successfully for the candidates and causes they support, and to associate for the purposes of litigation.  It is

24

precisely this sort of information that the associational privilege of the First Amendment protects against disclosure.  *NAACP v. Button*, 371 U.S. at 431 ("[A]ssociation for litigation may be the most effective form of political association."); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of communications "would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'"); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance.  Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage.  Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

17.     All correspondence, emails, and documents drafted, sent, or received by any Plaintiff that is related to purported suppression or disenfranchisement in the election context.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and vague with respect to the terms "purported suppression or disenfranchisement in the election context."  Plaintiffs further object to this request to the extent it

25

calls for the disclosure of privileged attorney-client, work-product material, or trial-preparation materials.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

18.    All documents related to, referring to, or concerning the lawsuit captioned *Ohio State N.A.A.C.P., et al. v. Husted, et. al.*, case No. 2:14-CV-404 (S.D. Oho 2014).

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive materials, non-privileged documents in their possession, custody, or control.

19.    All documents related to, referring to, or concerning any statement or communication of agreement with, disagreement with, viewpoints about, or positions with respect to the Challenged Laws and this litigation made by any of the Ohio Democratic Party's county chapters, affiliates, or entities.

**RESPONSE:** Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, and that the terms "agreement with, disagreement with, viewpoints about, or positions with respect to the Challenged Laws and this litigation" are vague and ambiguous. Plaintiffs further object to this request to the extent that it calls for privileged attorney-client, work-product, trial-preparation materials or materials protected by the common-interest privilege. Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and

26

appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case

concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in

adopting and implementing the Challenged Laws, and the views of entities that are not parties to

this litigation are irrelevant and not subject to discovery.

Plaintiffs additionally object to this request on the ground that it calls for information

protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66;

*NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178;

*Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet

Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985

WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' communications about this suit would reveal the identity,

viewpoints, and political associations of Plaintiffs and their supporters, thereby severely chilling

their right to organize their affairs, select and promote their message, advocate successfully for the

candidates and causes they support, and to associate for the purposes of litigation.  It is precisely

this sort of information that the associational privilege of the First Amendment protects against

disclosure.  *NAACP v. Button*, 371 U.S. at 431 ("[A]ssociation for litigation may be the most

effective form of political association."); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of

communications "would have a potential 'for chilling the free exercise of political speech and

association guarded by the First Amendment'"); *Beinin*, 2007 WL 1795693, at *4 ("One of the

purposes inherent in the right of association is to encourage like-minded individuals to discuss

issues of common importance.  Had Plaintiff's email correspondents realized that privately

supporting his litigation would potentially subject them to intrusive depositions or other discovery,

they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled

disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would

create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage. Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

20.  All communications between or among the ODP and any of its county affiliates related to the Challenged Laws or this litigation.

**RESPONSE:** Plaintiffs object to this request on the ground that it is duplicative of request No. 19. Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, and that the terms "agreement with, disagreement with, viewpoints about, or positions with respect to the Challenged Laws and this litigation" are vague and ambiguous. Plaintiffs further object to this request to the extent that it calls for privileged attorney-client, work-product, or trial-preparation materials. Plaintiffs further object to this request on the ground that it is calculated to burden and harass and is not reasonably calculated to lead to the discovery of admissible evidence. The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the challenged laws, and the views of entities that are not parties to this litigation are irrelevant and not subject to discovery.

Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment. *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at \*5; *Beinin*, 2007 WL 1795693, at \*4; *ISKCON*, 1985 WL 315, at \*8; *Eilers*, 575 F. Supp. at 1261.

28

The disclosure of Plaintiffs' communications about this suit would reveal the identity, viewpoints, and political associations of Plaintiffs and their supporters, thereby severely chilling their right to organize their affairs, select and promote their message, advocate successfully for the candidates and causes they support, and to associate for the purposes of litigation.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure.  *NAACP v. Button*, 371 U.S. at 431 ("[A]ssociation for litigation may be the most effective form of political association."); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of communications "would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'"); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance.  Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage.  Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

21.     Documents reflecting the GOTV efforts and voter education efforts of Plaintiffs.

**RESPONSE:**  Plaintiffs object to this request on the ground that it is duplicative of requests Nos. 8, 9, 10, and 11.  Plaintiffs further object to this request on the grounds that it is overbroad and unduly burdensome.

Moreover, Plaintiffs object to this request to the extent it calls for the disclosure of specific plans for future GOTV and voter education efforts on the ground that such information is protected by the associational privilege of the First Amendment. *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of information containing Plaintiffs' detailed purposes, strategic direction, plans, strategic plans, goals, programs, and planned events would severely impair their ability to organize their affairs, select and promote their message, and to advocate successfully for the candidates and causes they support. It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. "The First Amendment protects political association as well as political expression[.]" *Buckley*, 424 U.S. at 15; *NAACP v. Button*, 371 U.S. at 431 ("Exercise of these basic freedoms in America has traditionally been through the media of political associations. Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."). The "right to associate with others to advance one's shared political beliefs" entails "the right to exchange ideas and formulate strategy and messages, and to do so in private," as well as "to organize and direct them in the way that will make them most effective." *Perry*, 591 F.3d at 1142 & n.9. The "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaign." *Id.* As a result, the First Amendment protects against a compelled disclosure that would frustrate an organization's ability "to pursue [its] political goals effectively by revealing to their opponents activities, strategies and tactics." *Id.* at 1142 n.10 ((internal citations omitted); *see also AFL-CIO*, 333 F.3d at 178 (holding "that compelled disclosure of internal planning materials . . . will . . .

frustrate those groups' decisions as to how to organize . . . [themselves], conduct . . . [their] affairs, and select . . . [their] leaders, as well as their selection of a message and ... the best means to promote that message" (quotation omitted)); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of "internal communications and communications among various groups . . . would have a potential for chilling the free exercise of political speech and association guarded by the First Amendment" (quotation omitted)); *Dunnet Bay Const. Co.*, 2011 WL 5417123, at *3 ("The First Amendment privilege from disclosure in discovery has been extended to protect against the disclosure of . . . the content of internal communications between members, employees, and agents of political campaigns."); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance."); *ISKCON*, 1985 WL 315, at *8 (granting protective order against interrogatories seeking the disclosure of plaintiff's internal communications and information); *Eilers*, 575 F. Supp. at1261 ("Actions that may have the effect of chilling or curtailing the exercise of . . . first amendment freedoms must be closely scrutinized.").

Subject to these specific objections and the General Objections above, and subject to the entry of an appropriate protective order, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

22.     All documents related to, referring to, or reflecting the meetings and communications that any Plaintiff had with any person or entity preceding the filing of this lawsuit related to the Challenged Laws.

**RESPONSE:**  Plaintiffs object to this request on the ground that it is duplicative of requests Nos. 16, 19, and 20.  Plaintiffs object to this request to the extent that it calls for privileged attorney-client, work-product, or trial-preparation materials or materials protected by the common-

interest privilege. Plaintiffs object to this request on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome. Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs. The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' internal deliberations about joining this suit is irrelevant and therefore not subject to discovery.

Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment. *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' communications about this suit would reveal the identity, viewpoints, and political associations of Plaintiffs and their supporters, thereby severely chilling their right to organize their affairs, select and promote their message, advocate successfully for the candidates and causes they support, and to associate for the purposes of litigation. It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. *NAACP v. Button*, 371 U.S. at 431 ("[A]ssociation for litigation may be the most effective form of political association."); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of communications "would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'"); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss

32

issues of common importance. Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage. Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

23. All communications to or from any of the ODP's, the DPCC's, or the MCDP's officers, members, or committees, related to any of the Challenged Laws or to this litigation.

**RESPONSE:** Plaintiffs object to this request on the ground that it is duplicative of request No. 16, 19, 20 and 22. Plaintiffs also object to this request to the extent that it calls for privileged attorney-client, work-product, or trial-preparation materials or materials protected by the common-interest privilege. Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs. The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting and implementing the Challenged Laws, and Plaintiffs' communications about those laws or this suit is irrelevant and not subject to discovery.

Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment. *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–*

*Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of Plaintiffs' communications about the Challenged Laws or this suit would reveal the identity, viewpoints, and political associations of Plaintiffs and their supporters, thereby severely chilling their right to organize their affairs, select and promote their message, advocate successfully for the candidates and causes they support, and to associate for the purposes of litigation. It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure. *NAACP v. Button*, 371 U.S. at 431 ("[A]ssociation for litigation may be the most effective form of political association."); *Wyoming*, 208 F.R.D. at 454–55 (disclosure of communications "would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment'"); *Beinin*, 2007 WL 1795693, at *4 ("One of the purposes inherent in the right of association is to encourage like-minded individuals to discuss issues of common importance. Had Plaintiff's email correspondents realized that privately supporting his litigation would potentially subject them to intrusive depositions or other discovery, they may have chosen to refrain from speaking."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests in two ways. First, such disclosure might make the plaintiff, or future plaintiffs, reluctant to accept the support of unpopular groups, fearing that evidence of such support would be used at trial to the plaintiff's disadvantage. Second, the supporters themselves, for various reasons, may have a desire for anonymity that might cause them to withhold support knowing that their names would be disclosed.").

24.     All documents referring to, related to, or reflecting any circumstance where any

34

individual purportedly was denied the right to vote because of any of the Challenged Laws.

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the ground that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

25.    All documents referring to, related to, or reflecting any circumstance where an individual purportedly was unable to vote because of any of the Challenged Laws.

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "referring to, related to, or reflecting any circumstance." Plaintiffs object to this request to the extent it calls

for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.


26.    All statements, testimony, declarations, or affidavits from any person or entity related to this lawsuit or to any of the facts, claims, allegations, or defenses in this matter.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the ground that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as

36

evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

27. All documents supporting, contradicting, or related to the allegation in Paragraph 29 of the Amended Complaint that the wait-time to vote "was approximately two hours."

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the ground that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

37

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

28.     All non-privileged statements made by any of Plaintiffs or their agents or lawyers in the press, in blogs, in Twitter, on Facebook or in any other forum related to this lawsuit or to the issues and fact related to this lawsuit.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, and that the terms "agents" and "any other forum" are vague.  Plaintiffs further object to this request to the extent it seeks publicly available documents and materials that can more easily be obtained from another source.  Plaintiffs' object to this request to the extent it calls for statements by Plaintiffs' lawyers and agents.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged materials in their possession, custody, or control.

29.     All documents that support, contradict, or relate to Plaintiffs' allegations in Paragraphs 2, 14, 91, and elsewhere in the  Amended Complaint that the Challenged Laws were "designed," "intended," or enacted "with the knowledge" to "burden" or "suppress" "specific populations, in particular African-Americans, Latinos, and young people[.]"

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting

38

discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

30.     All documents that support, contradict, or concern Plaintiffs' allegations in Paragraphs 3, 89, and elsewhere in the Amended Complaint that "[p]rior to S.B. 238, tens of thousands of Ohioans, including a disproportionate number of African Americans, had registered and/or voted during 'Golden Week.'"

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or concern" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as

evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

31.     All documents that support, contradict, or concern Plaintiffs' allegation in Paragraph 9 and elsewhere in the Amended Complaint that "The effect of S.B. 200 and Directive 2014-26 will be a reduction in the number of voting machines and a resulting increase in the length of lines at the polls."

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or concern" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such,

responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

32.    All documents that support, contradict, or concern Plaintiffs' allegation in Paragraphs 36, 74, 79, and elsewhere in the Amended Complaint that voter turnout has increased since 2004 "particularly among African American, Latino, and younger voters."

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or concern" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

41

33.     All documents supporting, contradicting, or concerning Plaintiffs' allegation in Paragraph 81 and elsewhere in the Amended Complaint that "tens of thousands of Ohioans utilize[ed] [Golden Week] to register and vote on the same day, including a disproportionate number of African Americans."

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "supporting, contradicting, or concerning" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the ground that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

34.     All documents supporting, contradicting, or concerning Plaintiffs' allegation in Paragraphs 113, 119, and elsewhere in the Amended Complaint that use of DRE voting

equipment "can exacerbate the problems that lead to long lines" because it "can take significantly longer to cast a ballot using DREs than to cast paper ballots that are subsequently scanned."

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "supporting, contradicting, or concerning" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

35.    All documents supporting, contradicting, or concerning Plaintiffs' allegation in Paragraph 114 and elsewhere in the Amended Complaint that "Recent reports that Ohio's voting equipment is old suggest that malfunctioning machines could exacerbate these problems, yet again resulting in long lines and disenfranchised voters in the 2016 presidential elections."

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "supporting, contradicting, or concerning" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the ground that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

36. All documents supporting, contradicting, or concerning Plaintiffs' allegation in Paragraphs 125, 138, and elsewhere in the Amended Complaint that "African Americans utilize absentee voting, particularly early in-person voting, at higher rates than other voters."

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "supporting, contradicting, or concerning" Plaintiffs' allegations. Plaintiffs object to this request

44

to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.


37.     All documents reflecting, regarding, or concerning any event, change, circumstance, event, analysis, decision, reason, or occurrence that caused or encouraged ODP, MCDP, or DPCC to wait until August 2015 to seek to file a lawsuit regarding the Challenged Laws.

**RESPONSE:**  Plaintiffs object to this request on the ground that the term "wait" is based on a false premise and is argumentative. Plaintiffs object to this request on the grounds that it calls for the disclosure of privileged attorney-client, work-product, and trial-preparation material. Plaintiffs object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "reflecting, regarding, or concerning any event, change, circumstance, event, analysis, decision, reason, or occurrence." Plaintiffs further object to this request on the grounds that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to

45

lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the challenged laws, and any material related to Plaintiffs' decision to bring this lawsuit are irrelevant and not subject to discovery.

Moreover, Plaintiffs object to this request on the ground that it calls for information protected by the associational privilege of the First Amendment.  *See Buckley*, 424 U.S. at 66; *NAACP v. Button*, 371 U.S. at 429; *Perry*, 591 F.3d at 1142 & n.9; *AFL-CIO*, 333 F.3d at 178; *Machinists Non–Partisan Polit. League*, 655 F.2d at 388; *Wyoming*, 208 F.R.D. at 454–55; *Dunnet Bay Construction Co.*, 2011 WL 5417123, at *5; *Beinin*, 2007 WL 1795693, at *4; *ISKCON*, 1985 WL 315, at *8; *Eilers*, 575 F. Supp. at 1261.

The disclosure of information regarding Plaintiffs' decision to join this suit would inhibit Plaintiffs' core First Amendment right to associate for the purposes of litigation.  It is precisely this sort of information that the associational privilege of the First Amendment protects against disclosure.  "[A]ssociation for litigation may be the most effective form of political association," and such activities "are modes of expression and association protected by the First and Fourteenth Amendments."  *NAACP v. Button*, 371 U.S. at 429; *see also Beinin*, 2007 WL 1795693, at *3 ("Support of litigation is a form of expression and association protected by the First Amendment. Compelled disclosure of the names of individuals or groups supporting a plaintiff's lawsuit thus creates a risk of interference with First Amendment-protected interests."); *Eilers*, 575 F. Supp. at 1261 ("[C]ompelled disclosure of the names of those individuals or groups supporting the plaintiff's lawsuit would create a genuine risk of interference with protected interests[.]").

38.     All documents showing, concerning, or relating to the voting participation of

whites, African Americans, Latinos, and young people in Ohio during so-called "Golden Week."

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "showing, concerning, or relating to" voting participation among whites, African Americans, Latinos, and young people. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

39.    All documents showing, concerning, or relating to the use of mail-in voting in Ohio by whites, African Americans, Latinos, and young people.

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "showing, concerning, or relating to" the use of mail-in voting in Ohio by whites, African Americans,

Latinos, and young people. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

40. All reports, statistics, communications, methodology, and any other documents that support, contradict, or relate to the factual basis for Plaintiffs' claim that the Challenged Laws burden the right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution, as alleged in the First, Third, and Seventh Claims to Relief of the Amended Complaint.

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the ground that it is premature. Plaintiffs are currently conducting

discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control at the appropriate time.

41.     All reports, statistics, communications, methodology, and any other documents that support, contradict, or relate to the factual basis for Plaintiffs' claim that the Challenged Laws deny African-American and Latino voters the right to vote in violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution, as alleged in the Second Claim to Relief of the Amended Complaint.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint

49

and are not required to present all of their evidence at this stage, nor are Plaintiffs required to

index or review their records to segregate out particular documents that may be used at trial as

evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their

case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks

publicly available information and research equally available to Defendants and, as such,

responsive materials may be obtained from another source that is more convenient and less

burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any

responsive, non-privileged documents in their possession, custody, or control at the appropriate

time.


42.     All reports, statistics, communications, methodology, and any other documents

that support, contradict, or relate to the factual basis for Plaintiffs' claim that the Challenged Laws

will result in the denial or abridgment of the right to vote to individuals on account of race in

violation of Section 2 of the Voting Rights Act, as alleged in the Fourth Claim to Relief of the

Amended Complaint.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of

privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to

this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support,

contradict, or relate to" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls

for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further

object to this request on the ground that it is premature.  Plaintiffs are currently conducting

discovery and gathering evidence regarding the allegations made in their Amended Complaint

and are not required to present all of their evidence at this stage, nor are Plaintiffs required to

index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

43.    All reports, statistics, communications, methodology, and any other documents that support, contradict, or relate to the factual basis for Plaintiffs' claim that the Challenged Laws will result in the deprivation of the right to vote under Section 1971 of  the  Civil  Rights Act of 1964, as alleged in the  Fifth Claim to Relief  in the Amended Complaint.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations.  Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants.  Plaintiffs further object to this request on the grounds that it is premature.  Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request.  Plaintiffs also object to this request to the extent that it seeks

51

publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

44.     All reports, statistics, communications, methodology, and any other documents that support, contradict, or relate to the factual basis for Plaintiffs' claim that the Challenged Laws will result in the deprivation of procedural due process under the Fourteenth Amendment, as alleged in the Sixth Claim to Relief of the Amended Complaint.

**RESPONSE:** Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial preparation materials. Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "support, contradict, or relate to" Plaintiffs' allegations. Plaintiffs object to this request to the extent it calls for documents that are in the custody, possession, or control of Defendants. Plaintiffs further object to this request on the grounds that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

45.     All documents, items, objects, materials, charts, graphs, displays, and exhibits that Plaintiffs expect to, intend to, or may use or offer as exhibits or as evidence at any hearing or trial of this matter.

**RESPONSE:** Plaintiffs object to this request on the ground that it is premature. Plaintiffs are currently conducting discovery and gathering evidence regarding the allegations made in their Amended Complaint and are not required to present all of their evidence at this stage, nor are Plaintiffs required to index or review their records to segregate out particular documents that may be used at trial as evidence to prove or disprove a particular fact, or otherwise conduct a dress rehearsal of their case at Defendant's request. Plaintiffs also object to this request to the extent that it seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient and less burdensome.

Subject to these objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control at the appropriate time.

46.     As to any expert:

a.     a copy of the expert's Curriculum Vitae;

b.     a copy of any report prepared or created by the expert during the expert's engagement;

c.     communications between Plaintiffs' attorneys and any expert that (i) relate

53

to compensation for the expert's study or testimony; (ii) identify facts or data that the Plaintiffs' attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the Plaintiffs' attorney provided and that the expert relied on in forming the opinions to be expressed.

d.    a copy of any document or item reviewed by or relied on by the expert during the expert's engagement for purposes of any report or preparation of testimony or opinions; and

e.    a copy of all documents concerning the expert's fees, charges, billings, or invoices concerning this matter.

**RESPONSE:**  Plaintiffs object to this request to the extent that it is premature as to the Court's October 16, 2015 deadline for rebuttal reports.  Plaintiffs object to this request to the extent it calls for the disclosure of expert witness information that is not discoverable under Rule 26(b)(4).

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, discoverable, and non-privileged information in their possession, custody, or control at the appropriate time.

47.    For each of Plaintiffs' experts, a copy of all reports, articles, papers, periodicals, and any other documents cited in any expert report produced in this litigation.

**RESPONSE**:  Plaintiffs object to this request on the grounds that is unduly burdensome and seeks publicly available information and research equally available to Defendants and, as such, responsive materials may be obtained from another source that is more convenient.

48.    If not otherwise encompassed by another Request for Production, all documents

in Plaintiffs' possession, custody, or control that relate in any way to any claim, statement, argument, or defense in this lawsuit.

**RESPONSE:**  Plaintiffs object to this request on the grounds that it is overbroad, unduly burdensome, ambiguous and vague with respect the terms "not otherwise encompassed by another Request for Production . . .  that relate in any way to any claim, statement, argument, or defense in this lawsuit."  Plaintiffs object to this request on the grounds that it is duplicative of requests Nos. 5, 6, 7, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47.


49.    All documents reflecting Plaintiffs' efforts to preserve documents relevant or potentially relevant to this litigation.

**RESPONSE:**  Plaintiffs object to this request on the ground it calls for the disclosure of privileged attorney-client, work-product, and common-interest documents.


50.    All requests for public records or documents directed to any county board of elections in Ohio or to any county or state public official from Ohio, dated January 1, 2014 or thereafter, that relate in any way to elections in Ohio, voter information, election practices, or the facts and allegations in this litigation.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "that relate in any way to elections in Ohio, voter information, election practices."  Plaintiffs object to this request to the extent that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears

calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' public records requests that do not pertain to the subject matter of this lawsuit are irrelevant and therefore not subject to discovery.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.


51.    All communications to, from, or on behalf of any county board of elections in Ohio or any county or state public official from Ohio dated January 1, 2014 or thereafter, that relate in any way to elections in Ohio, voter information, election practices, or the facts and allegations in this litigation.

**RESPONSE:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "that relate in any way to elections in Ohio, voter information, election practices."  Plaintiffs object to this request to the extent that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to Plaintiffs' "communications to, from, or on behalf of any county board of elections in Ohio or any county or state public official" that does not pertain to the subject matter of this lawsuit is irrelevant and therefore not subject to discovery.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

52.     All documents and other information produced or provided by any county board of elections in Ohio or any county or state public official from Ohio in response to a request made by any Plaintiff or by Plaintiffs' counsel.

**REQUEST:**  Plaintiffs object to this request to the extent it calls for the disclosure of privileged attorney-client, work-product, or trial-preparation materials.  Plaintiffs object to this request on the ground that it is duplicative of requests Nos. 50 and 51.  Plaintiffs further object to this request as overly broad, unduly burdensome, ambiguous, and vague as to the terms "in response to a request made by any Plaintiff or by Plaintiffs' counsel."  Plaintiffs object to this request to the extent that it seeks information that has no conceivable relevance to any claim or defense in this action, is unlikely to lead to the discovery of admissible evidence, and appears calculated solely to harass, annoy, burden, and embarrass Plaintiffs.  The issues in this case concern the constitutionality, and/or legality under the Voting Rights Act, of Ohio's actions in adopting the Challenged Laws, and material related to "information produced or provided by any county board of elections in Ohio or any county or state public official from Ohio in response to a request made by any Plaintiff or by Plaintiffs' counsel" that does not pertain to the subject matter of this lawsuit is irrelevant and therefore not subject to discovery.

Subject to these specific objections and the General Objections above, Plaintiffs will produce any responsive, non-privileged documents in their possession, custody, or control.

Dated: October 9, 2015                                    Respectfully submitted,


                                                          /s/ *Rhett P. Martin*
                                                          **Marc E. Elias***
                                                          **Bruce V. Spiva***
                                                          **Elisabeth C. Frost***
                                                          **Rhett P. Martin***
                                                          PERKINS COIE LLP
                                                          700 Thirteenth Street, N.W., Suite 600
                                                          Washington, D.C. 20005-3960
                                                          Telephone: 202-654-6200
                                                          Facsimile: 202-654-6211
                                                          MElias@perkinscoie.com
                                                          BSpiva@perkinscoie.com
                                                          EFrost@perskinscoie.com
                                                          RMartin@perkinscoie.com

                                                          **Joshua L. Kaul***
                                                          PERKINS COIE LLP
                                                          1 East Main Street
                                                          Suite 201
                                                          Madison, WI 53703-5118
                                                          Telephone: (608) 663-7499
                                                          Facsimile: (608) 663-7499
                                                          JKaul@perkinscoie.com

                                                          **Donald J. McTigue (0022849)**
                                                          **Trial Attorney**
                                                          **J. Corey Colombo (0072398)**
                                                          MCTIGUE MCGINNIS & COLOMBO LLC
                                                          545 East Town Street
                                                          Columbus, OH 43215
                                                          Telephone: (614) 263-7000
                                                          Facsimile: (614) 263-7078
                                                          dmctigue@electionlawgroup.com
                                                          ccolombo@electionlawgroup.com

                                                          *Attorneys for Plaintiffs Ohio Democratic*
                                                          *Party, Democratic Party of Cuyahoga*
                                                          *County, Montgomery County Democratic*
                                                          *Party, Jordan Isern, Carol Biehle, and*
                                                          *Bruce Butcher*


                                                          *Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading was served on all Counsel of Record via electronic mail this 9th of October, 2015.

*/s/ Rhett P. Martin*
Rhett P. Martin