**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| OHIO DEMOCRATIC PARTY; DEMOCRATIC PARTY OF CUYAHOGA COUNTY; MONTGOMERY COUNTY DEMOCRATIC PARTY; JORDAN ISERN; CAROL BIEHLE; and BRUCE BUTCHER, | **Case No. 2:15 CV 1802** |
| Plaintiffs, | **JUDGE WATSON** |
| v. | **MAGISTRATE JUDGE KING** |
| JON HUSTED, in his official capacity as Secretary of State of the State of Ohio; and MIKE DEWINE, in his official capacity as Attorney General of the State of Ohio, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR A STAY PENDING APPEAL**

## INTRODUCTION

After waiting for a week following the issuance of the Court's opinion in this case, and without consulting opposing counsel, Defendants have moved for a stay pending appeal— ostensibly based on concerns relating to low-turnout special elections that will be held in a limited number of jurisdictions on August 2, 2016.  As set forth below, however, Defendants have not established that they are likely to succeed on appeal; they have provided no concrete evidence that election administrators will be irreparably harmed absent a stay; and they have simply ignored the powerful interest of Plaintiffs and the public in having in place a voting regime that is free of discriminatory and unconstitutional burdens.  Moreover, the issuance of a stay pending appeal would risk unnecessarily manufacturing a *Purcell* issue with respect to the 2016 presidential election, *see generally Purcell v. Gonzalez*, 549 U.S. 1 (2006), when millions of Ohioans will be exercising their right to vote.  Defendants' motion should be denied.

# ARGUMENT

Defendants have failed to demonstrate that they are entitled to a stay pending appeal.  In determining whether to grant such a stay, a court must consider four factors: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.  *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).  As the moving party, Defendants bear the burden of showing that they are entitled to the requested stay.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Significantly here, the demonstration of a mere "possibility" of success on the merits is insufficient, *see Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977); the party seeking stay must demonstrate that there is "a likelihood of reversal" by the appeals court.  *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *see also id.* ("a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits" than would a party seeking a preliminary injunction); *cf. Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").  In addition, the irreparable harm to the movant must "decidedly outweigh[] the harm that will be inflicted on others if a stay is granted."  *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).  Defendants have not made either showing in this case.

**A.      Likelihood of Success on the Merits**

Most significantly, Defendants' likelihood of success on appeal is low.  As this Court's opinion explains, "this is not the first time that S.B. 238 has been challenged."  Dkt. 117, Findings of Fact and Conclusions of Law ("Op.") at 29.  In *Ohio State Conference of N.A.A.C.P. v. Husted*, 43 F. Supp. 3d 808 (S.D. Ohio 2014), "another judge of [the Southern District of Ohio] declared S.B. 238 unconstitutional and in violation of § 2 of the VRA and granted a preliminary injunction enjoining its enforcement," and the "United States Court of Appeals for the Sixth Circuit affirmed the district court's decision in *Ohio State Conference of N.A.A.C.P. v. Husted*, 768 F.3d 524 (6th Cir. 2014)."  Op. at 29.  This Court's ruling is thus the third separate decision to find that the elimination of Golden Week violated the Equal Protection Clause and the Voting Rights Act.  And one of those decisions was issued by the very court that will decide the appeal in this case.  This history alone provides powerful evidence that Defendants are unlikely to succeed on appeal.

The nature of the Court's opinion in this case confirms that conclusion.  Because the Court enjoined the elimination of Golden Week on two separate grounds, Defendants, to succeed on appeal, will need to establish that the Court erred in its analysis of Golden Week under *both* the Equal Protection Clause and the VRA.  That would be an uphill climb in an ordinary case.  But here, the Court issued a heavily cited, comprehensive 120-page opinion.  The Court's finding that the elimination of Golden Week imposes a racially disparate burden on the right to vote involves a detailed factual analysis that spans more than a dozen pages of its opinion.  *See* Op. at 35-48.  And the Court's conclusions that "Defendants' justifications for S.B. 238, while they may be legitimate, are minimal, unsupported, or not accomplished by S.B. 238"; that "S.B. 238 was passed based upon tenuous justifications"; and that "Defendants have failed to establish

- 3 -

that the justifications are 'actually necessary' to burden the right to vote of African Americans," *id.* at 56, 107, are rooted in expansive and careful analysis. *See id.* at 48-56; *see also id.* at 101-07 (assessing the Senate Factors and finding, based on those factors and the totality of the circumstances, that "S.B. 238 interacts with the historical and social conditions facing African Americans in Ohio to reduce their opportunity to participate in Ohio's political process relative to other groups of voters"). Such a fact-intensive opinion, decided on two separate grounds, is not likely to be overturned on appeal.

Notably, Defendants' motion for a stay does not point to some clear factual error in the Court's opinion or a critical issue that the Court failed to consider. Instead, the motion recycles arguments—in some cases verbatim—that were already before this Court and that were rejected in the Court's opinion in this case. *Compare* Mot. to Stay Pending Appeal and Memo. in Support ("Motion") at 8-11, *with* Defs.' PFOF/COL ¶¶ 182-192; *compare* Motion at 12-14, *with* Defs.' PFOF/COL ¶¶ 214, 218-221. The motion itself therefore provides no reason to conclude that Defendants' arguments with respect to Golden Week are likely to fare any better on appeal than they have here. For this reason, and those set forth above, Defendants' likelihood of success on appeal is low, and this factor weighs heavily against the issuance of a stay pending appeal.

**B.     Balance of the Equities**

The balance of the equities also weighs against the issuance of a stay pending appeal. Whereas Defendants have failed to provide concrete evidence of irreparable harm that they or Ohio's election administrators will suffer absent a stay, Plaintiffs and the public have a clear interest in having Ohio's elections conducted in a nondiscriminatory, constitutional manner.

**1.      Defendants will not be irreparably harmed absent a stay**

To begin with, Defendants' motion for a stay presents almost no actual evidence that election officials will be burdened in any way by the reinstatement of Golden Week for the August 2016 special elections.  Defendants do not identify the number of jurisdictions that will be holding special elections or the percentage of Ohio voters who will be eligible to vote in such elections, *see* Motion at 3, 6 ("several jurisdictions" will be holding special elections); *see also id.* at 3 ("only a limited number of voting districts hold special elections"), much less testimony that was subject to cross-examination or even declarations in support of their claims that election officials will be burdened absent a stay.  *Cf. Mich. Coal.*, 945 F.2d at 154 (moving party must address each pertinent factor and provide "specific facts and affidavits supporting assertions that these factors exist," and must allege irreparable harm that is "both certain and immediate, rather than speculative or theoretical").

The evidence that is available demonstrates that election officials will not be materially burdened—and certainly will not be irreparably harmed—by having Golden Week in effect for the August special elections.  There are no statewide races or issues being contested this August.  Publicly available information suggests that only about 19 of Ohio's 88 counties will be holding special elections; and in many of those counties, only one or a handful of towns or cities are holding elections.[1]  Further, turnout for these elections will be extremely low.  In the analogous elections in 2012, there were a total—not during Golden Week, but overall—of 172 ballots cast

---

[1] Seventeen counties appear to have posted the (required) Election Notice for Use With the Federal Write-In Absentee Ballot identifying the candidates/issues for the August special elections.  Two other counties that appear not to have posted such a notice list early voting hours on their websites for the August special elections.  Copies of these materials, which were obtained from websites for the pertinent county boards of elections, are attached as Exhibit 1.

in Fulton County and 2,933 ballots cast in Franklin County.[2]  In the analogous elections in 2014, a total of 690 ballots were cast in Hamilton County.[3]  *See also* Motion at 3 (asserting that "only a limited number of voting districts hold special elections, and given the low turnout during the start of early voting, few (if any) voters will be impacted by a stay").

Given these numbers, Defendants' claim that election officials will be burdened if Golden Week voting is available during the August special elections is absurd on its face. Moreover, these numbers show why the situation presented here is fundamentally different from the one that was presented to the Supreme Court in late September of 2014:  In the general election of 2014, in stark contrast to the extremely low turnout elections that will take place in August of this year, over 3 million ballots were cast in Ohio, including nearly 300,000 ballots cast in Franklin County, nearly 250,000 ballots cast in Hamilton County, and 11,000 ballots cast in Fulton County.  *See* Website of Secretary of State Jon Husted, 2014 Election Results, *available at* http://www.sos.state.oh.us/SOS/elections/Research/electResultsMain/2014 Results.aspx.

Tellingly, in their Rule 26(f) Report in this case, Defendants identified a variety of problems with Plaintiffs' proposed trial dates of February 15 or March 1, 2016, *see* Dkt. 20 at 7-8 ("Either way, the trial would fall during the worst possible time for Ohio's election officials . . . : right in the middle of preparing for and managing the presidential primary election."), but they did not identify any of the concerns now being raised in connection with their alternative

_____

[2] *See* Fulton County Special Elections Results for August 7, 2012, *available at* www.fultoncountyoh.com/DocumentCenter/View/904; Franklin County Official Summary Report of August 7, 2012 Special Election, *available at* vote.franklincountyohio.gov/assets/ downloads/election-information/2012//(3)%20Special%20Election%20-%20August%202012/(1) %20Election%20Results/Official_Summary_Results%20Franklin%20County%20Only.pdf.
[3] *See* Hamilton County Canvass Report for August 5, 2014 Special Election, *available at* boe.hamilton-co.org/files/files/electionsArchive/special/Aug14offcanvass.pdf.

proposal of a trial beginning on April 11, 2016, *see id.* at 6—a trial date that plainly would not have resulted in the issuance of a final order in this case prior to May 2016.  And, in opposing Plaintiffs' request for a *four-day* extension (including two weekend days) to the due date for post-trial briefs, Defendants emphasized that "[f]inality will serve the interests of election administration and voters."  Dkt. 107 at 1.

In any event, the Court's opinion in this case already demonstrates why any burden on election officials from offering voting during Golden Week will be *de minimis*:

> Ohio law requires BOEs to keep their offices open until 9 p.m. on the final day of registration and to remain open for a period of time necessary for the performance of its duties at all other times during each week.  Ohio Rev. Code § 3501.10(B).  *Golden Week would therefore presumably take place during times when BOEs are already open for business.  See* Tr. Trans. 202, ECF No. 100 (Burke) (Hamilton County BOE was open for business during the week that would have been Golden Week in 2014).  Therefore, any BOEs that conduct EIP voting at their offices are unlikely to incur substantial additional overhead costs.  *See N.A.A.C.P. v. Husted II*, 768 F.3d at 549 (affirming a similar finding in *N.A.A.C.P. v. Husted I*).

Op. at 53-54 (emphasis added).  The opinion further explains that "Defendants have not offered any evidence that counties were unable to manage the minimal costs of maintaining Golden Week in the past or would be unable to do so in the future," and that "Defendants fail to present sufficient evidence that BOEs were unable to manage . . . administrative burdens when Golden Week was in place or that they will be unable to do so should it be reinstated."  *Id.* at 54-55.  Indeed, the opinion notes that "the record also includes evidence that Golden Week aids in election administration in that it (1) provided boards more time to mail out and process absentee ballots and (2) relieved pressure on the polls on Election Day."  *Id.* at 55 n.18 (internal citations omitted).  In short, no irreparable harm will result from the reinstatement of Golden Week voting for the August special elections.

### 2. A stay will irreparably harm Plaintiffs and the public interest

In contrast to Defendants' negligible showing of irreparable harm, Plaintiffs and the public interest will be irreparably harmed if a stay is issued. "When constitutional rights are threatened or impaired, irreparable injury is presumed. A restriction on the fundamental right to vote therefore constitutes irreparable injury." *Obama for Am.*, 697 F.3d at 436. *See generally* Op. at 31 ("Voting is a fundamental right, and '[o]ther rights, even the most basic, are illusory if the right to vote is undermined.'") (quoting *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964)). Further, "[t]he public interest . . . favors permitting as many qualified voters to vote as possible." *Obama for Am.*, 697 F.3d at 436. Here, the Court has found that S.B. 238's elimination of Golden Week unconstitutionally burdens the right to vote and interacts with historical and social conditions facing African Americans in Ohio in a fashion that reduces their opportunity, relative to other voters, to participate in the political process. *See generally* Op. at 56-57, 107-08. Once the August elections are held, they cannot be undone, meaning that, if the reinstatement of Golden Week is stayed through that election, voters will suffer the irreparable harm of having cast ballots under an unlawful, unconstitutional regime.

Concerns about voter confusion also militate in favor of denying the requested stay. While Defendants assert that "[t]he possibility of a mid-stream change to early voting in a presidential election year poses too great a risk of voter confusion" and that "[c]hanging the days and hours now, only to have them potentially changed again in a few weeks, will create needless confusion that can be simply avoided by a stay of this Court's Order pending appeal," Motion at 7, these arguments are premised on the notion that Defendants are likely to succeed on appeal. As set forth above, however, that assumption is unfounded and likely wrong.

Viewed (appropriately) through the lens of Plaintiffs' likely success on appeal, Defendants' arguments about voter confusion support *denial* of a stay.  This Court's Order reinstating Golden Week received substantial public attention,[4] and many voters have therefore learned that Golden Week voting will again be available to the public.  To stay that Order now, only to have the Sixth Circuit lift the stay following the appeal, would introduce unnecessary confusion that will be avoided if the Court's Order reinstating Golden Week simply remains in effect.

Moreover, the issuance of a stay pending appeal would introduce the serious risk of a *Purcell* problem with respect to the 2016 presidential election, when millions of Ohioans will cast ballots.  There is ample time between now and November for the State of Ohio to ensure that Golden Week voting is available and can run smoothly.  But if this Court's Order is stayed until the Sixth Circuit rules, there is little question that Defendants will argue that the Sixth Circuit's ruling has come too late to be implemented in time for the presidential election, potentially forcing millions of Ohioans to vote under a regime that violates the Equal Protection Clause and imposes a discriminatory burden on African Americans.  For that reason alone, the balance of the equities weighs heavily in Plaintiffs' favor.

## CONCLUSION

Defendants have failed to establish either that they are likely to succeed on appeal or that the balance of the equities weighs in favor of the issuance of a stay.  For each of these reasons,

---

[4] *See, e.g.*, Darrel Rowland, "Judge Rules Ohio Voter Rights Violated," *Columbus Dispatch*, May 25, 2016, *available at* www.dispatch.com/content/stories/local/2016/05/24/ohio-golden-week-ruling.html; Associated Press, "Judge: Law Trimming Early Voting in Ohio Unconstitutional," May 24, 2016, *available at* www.cincinnati.com/story/news/2016/05/24/judge-law-trimming-early-voting-ohio-unconstitutional/84865138; Jackie Borchardt, "Federal Judge Blocks Ohio Law that Eliminated 'Golden Week' Voting, *Cleveland Plain Dealer*, May 24, 2016, *available at* www.cleveland.com/open/index.ssf/2016/05/federal_judge_blocks_ohio_law.html.

their motion for a stay should be denied.  *See Mich. Coal.*, 945 F.2d at 153 (party seeking stay must demonstrate "a likelihood of reversal"); *Baker*, 310 F.3d at 928 (irreparable harm to movant must "decidedly outweigh[] the harm that will be inflicted on others if a stay is granted").  *See generally Obama for Am.*, 697 F.3d at 436 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

In the alternative, should the Court determine that a stay of its Order is appropriate with respect to the August special elections, Plaintiffs request that such stay be limited to the August special elections only and reject Defendants' broader request for a stay that applies until the appeal in this case is resolved.  In so doing, the Court would address Defendants' purported concerns related to the August special elections but not permit Defendants to manufacture a *Purcell* issue for the November general elections.

Dated:  June 3, 2016                          Respectfully submitted,

                                             s/ Bruce V. Spiva
                                             **Bruce V. Spiva***
                                             **Trial Attorney**
                                             **Marc E. Elias***
                                             **Rhett P. Martin***
                                             **Amanda R. Callais***
                                             PERKINS COIE LLP
                                             700 Thirteenth Street, N.W., Suite 600
                                             Washington, D.C. 20005-3960
                                             Telephone: 202-654-6200
                                             Facsimile: 202-654-6211
                                             BSpiva@perkinscoie.com
                                             MElias@perkinscoie.com
                                             RMartin@perkinscoie.com
                                             ACallais@perkinscoie.com

                                             **Joshua L. Kaul***
                                             PERKINS COIE LLP
                                             1 East Main Street, Suite 201
                                             Madison, WI 53703-5118
                                             Telephone: (608) 663-7460
                                             Facsimile: (608) 663-7499
                                             JKaul@perkinscoie.com

                                             **Donald J. McTigue (0022849)**
                                             **J. Corey Colombo (0072398)**
                                             MCTIGUE MCGINNIS & COLOMBO LLC
                                             545 East Town Street
                                             Columbus, OH 43215
                                             Telephone: (614) 263-7000
                                             Facsimile: (614) 263-7078
                                             dmctigue@electionlawgroup.com
                                             ccolombo@electionlawgroup.com

                                             *Attorneys for Plaintiffs Ohio Democratic Party,*
                                             *Democratic Party of Cuyahoga County,*
                                             *Montgomery County Democratic Party, Jordan*
                                             *Isern, Carol Biehle, and Bruce Butcher*

                                             *Admitted Pro Hac Vice

- 11 -

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the United States District Court, Southern District of Ohio, on June 3, 2016, and served upon all parties of record via the court's electronic filing system.

/s/  *Bruce V. Spiva*